Filed 7/9/24  In re J.S. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | B330027 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.R. et al.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 22CCJP00635 |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge Pro Tempore. Affirmed.

Deborah Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant J.S.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant J.R.

Dawyn R. Harrison, County Counsel and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

J.R. (mother) and J.S. (father) challenge the order terminating their parental rights under Welfare and Institutions[1] Code section 366.26 with respect to their youngest child, J.S. Their sole contention is that the order must be reversed because the juvenile court and the Department of Children and Family Services (Department) failed to comply with the initial inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). Finding any ICWA errors harmless, we affirm.

We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) The parties are familiar with the facts and procedural history of the case, so we do not fully restate those details here. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of juvenile court's decision "does not merit extensive factual or legal statement"].) Instead, in the Discussion section below, we discuss the facts and procedural background as needed to provide context for and resolve the issues presented in this appeal.

## DISCUSSION

### I.    The Department has not shown this appeal must be dismissed as unauthorized.

According to the Department, we "should dismiss the parents' appeal as unauthorized" because: (1) mother's notice of appeal was not signed by her or her counsel as required under California Rules of Court, rule 8.405(a)(2); and (2) although father's notice of appeal was signed by his counsel, "[t]here . . . is

---

[1]    All undesignated statutory references are to the Welfare and Institutions Code.

no indication [f]ather authorized the filing, and every indication [he] did not want to pursue the matter[,]" as he has not been personally involved in the underlying case or J.S.'s life since J.S.'s detention in June 2022. As discussed below, we are not persuaded by either contention.

As the Department correctly observes, the notice of appeal filed by mother's trial counsel was unsigned and, therefore, does not comply with California Rules of Court, rule 8.405(a)(2). On appeal, however, mother has submitted undisputed evidence showing that, by way of an e-mail sent on July 13, 2023, she directed her trial counsel to file a notice of appeal on her behalf. The evidence submitted also reflects mother's trial counsel "inadvertently omitted . . . her electronic signature" from the notice of appeal filed on mother's behalf. In light of this uncontroverted evidence, the fact that we must construe notices of appeal liberally in favor of their sufficiency (Cal. Rules of Court, rule 8.405(a)(3)), and "the strong public policy favoring consideration of appeals on their merits and not depriving a party of his [or her] right to appeal because of technical noncompliance when an appeal is taken in good faith" (*In re Malcolm D.* (1996) 42 Cal.App.4th 904, 910), we conclude mother's trial counsel was authorized to initiate this appeal on her behalf.

In contrast with mother's notice of appeal, the notice of appeal filed on father's behalf was signed by his trial counsel. "'An attorney's authority to represent his [or her] purported client is presumed in the absence of a strong factual showing to the contrary. [Citation.]' [Citation.] This presumption extends to an attorney's authority to file a notice of appeal. [Citation.] Thus, in the absence of evidence affirmatively showing the attorney's lack of authorization, a notice of appeal signed by the client's attorney

3

should raise no question about its validity." (*In re Helen W.* (2007) 150 Cal.App.4th 71, 78.) Although father's absence from this case and J.S.'s life arguably calls into question his commitment to pursuing this matter, we decline to conclude his *passive* disengagement constitutes evidence *affirmatively* showing his attorney lacked authorization to file this appeal.

Accordingly, for the reasons discussed above, we will not dismiss this appeal and will consider it on the merits.

## II. Reversal is not required based on ICWA non-compliance.

### A. Governing Principles and Standard of Review

ICWA[2] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881.) Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a)-(b) [incorporating federal definitions].)

The juvenile court and the Department have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed,

---

2    Our state Legislature incorporated ICWA's requirements into California statutory law in 2006. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11-12.) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. The phase at issue here is the initial duty to inquire.

The duty to inquire whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts the Department's investigation. (§ 224.2, subd. (a).) The Department's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.* subd. (b).) Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has reason to know that the child is an Indian child." (*Id.* subd. (c).) The juvenile court must also require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).) The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

"A juvenile court's finding that ICWA does not apply in a proceeding implies that (a) neither the Department nor the court had a reason to know or believe the subject child is an Indian child; and (b) the Department fulfilled its duty of inquiry." (*In re H.B.* (2023) 92 Cal.App.5th 711, 719.) We review a juvenile court's ICWA findings for substantial evidence. (*Ibid.*)

## II.    Analysis

The parents contend the order terminating their parental rights must be reversed because both the juvenile court and the

5

Department failed to fulfill their duties of initial inquiry. Specifically, they argue: (1) the Department made insufficient efforts to locate and interview father's siblings about J.S.'s potential Indian ancestry; (2) the juvenile court failed to ensure the Department made a complete inquiry into J.S.'s paternal lineage; and (3) these ICWA-related errors were prejudicial.

We are not convinced that reversal is required in this case. Assuming, *arguendo*, the Department and the juvenile court did not satisfy their respective duties of initial inquiry, we conclude that any such errors were harmless.

California appellate courts have formulated several different tests for deciding whether a defective initial inquiry is harmless. Unless and until our Supreme Court weighs in on the matter, Division Four of this court will apply the rule set forth in *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, review granted, Sept. 21, 2022, No. 275578 (*Dezi C.*). There, our colleagues in Division Two of this court stated: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Id.* at p. 779.)[3] "[A] reviewing court would have

---

3      Although *Dezi C.* addressed the Department's failure to conduct a proper inquiry, the same standard should apply to the juvenile court's failure to ensure the Department conducted a proper inquiry. (See Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"];

'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage *at all* [citation]; or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed [citation]." (*Ibid*, original italics.)

At the initial hearing on the section 300 petition filed on J.S.'s behalf, the juvenile court asked the parents, through their respective counsel, whether they had any American Indian heritage. In response, counsel stated neither parent had Indian ancestry. That same day, the parents each filed an ICWA-020 form representing, under the penalty of perjury, that: (1) neither they nor J.S. was a member of, nor eligible for membership in, a federally recognized Indian tribe; (2) none of their parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe; (3) neither they nor J.S. was a resident of or domiciled in a reservation, rancheria, Alaskan Native village, or other tribal trust land; (4) J.S. is not and has not been a ward of the tribal court; and (4) neither they nor J.S. possesses an Indian identification card indicating membership or citizenship in an Indian tribe.

---

*People v. Watson* (1956) 46 Cal.2d 818, 836 ["a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

Subsequently, when interviewed by the Department about the petition's allegations, both parents again denied having Native American ancestry. In his interview, father also related that he has three older siblings, whom he identified solely by their first names. Further, he stated he "was primarily raised by the system[,] as he was in foster care from ages 11-18." He did not provide the Department with his siblings' contact information or whereabouts.

A Department social worker later interviewed J.S.'s maternal step-grandfather, the only extended relative with whom the Department had contact while the underlying case was open, about J.S.'s Native American ancestry. Maternal step-grandfather reported he and J.S.'s maternal grandmother did not have Native American ancestry. He related that the only member of J.S.'s family with Native American ancestry was J.S.'s older half-brother, who was related to J.S. through mother and had Navajo ancestry solely through his paternal lineage. According to maternal step-grandfather, "no one in the family possesses a tribal membership/enrollment card, no one in the family resides/has resided on Indian Land[,] no one in the family receives/received services or benefits available to Indians from a tribe or [the] federal government[,]" "no one in the family is/was a ward of the tribal court[,] and no one in the family attends/attended [an] Indian [s]chool."

Despite the evidence above, the parents maintain that the Department's failure to investigate whether father's siblings had additional knowledge of J.S.'s potential Indian ancestry was prejudicial. We discern two arguments from their briefs.

First, although not entirely clear, the parents appear to argue that we should apply "the 'automatic reversal rule'"

8

articulated in *In re J.C.* (2022) 77 Cal.App.5th 70, 80-82, and *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432-437, to conclude remand is required in this case. (See *Dezi C.*, *supra*, 79 Cal.App.5th at p. 777 [listing *In re J.C.* and *In re Antonio R.* in the line of cases adopting "the 'automatic reversal rule'"]; see also *In re J.C.*, at p. 80 ["where . . . the Department's failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, we must remand for a proper inquiry" (fn. omitted)]; *In re Antonio R.*, at p. 435 ["Where the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances . . . prejudicial and reversible"].) We reject this argument because, as noted above, this division has chosen to take a different route by following "the 'reason to believe rule'" set forth in *Dezi C.* (*Dezi C.*, at p. 779.)

In any event, we note that, in asserting prejudice, father appears to suggest we "have 'reason to believe' further inquiry might lead to a different result" because the record shows his "self-reporting of 'no [Indian] heritage' may not be fully informed . . . ." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779.) Specifically, he contends his "knowledge of his family ancestry may be limited due to his early involvement with the foster care system" and asserts "his older siblings could have meaningful information as to whether there was Native American ancestry in the family" of which he was unaware.

Father's argument is unavailing because the record contains insufficient evidence demonstrating his denial of Indian ancestry may not have been fully informed. We acknowledge that, as noted above, father related "he was primarily raised by

9

the system[,] as he was in foster care from ages 11-18." The record, however, does not contain—and father has not proffered on appeal—any evidence elucidating to what extent, if any, his upbringing in foster care may have deprived him of knowledge about his family's potential Indian heritage. (See *Dezi C.*, *supra*, 79 Cal.App.5th at p. 779 [for purposes of evaluating whether defective ICWA inquiry is harmless, "the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal" (fn. omitted)].) The record, for example, does not show father was placed with non-biological caregivers, as opposed to with biological relatives who could have informed him of his Indian ancestry. Nor does it reflect that he had no contact with his parents and/or any other relatives while in foster care. Thus, on this record, we are not persuaded that father's denial of Indian ancestry may have been misinformed, such that further inquiry might have led the juvenile court to make a different ICWA finding.

In sum, both parents denied Indian ancestry during their interviews with the Department. Further, through their responses on their respective ICWA-020 forms, both parents denied having Indian heritage under penalty of perjury. And on the record before us, we are not convinced that either parent's knowledge of their heritage is incorrect, or that J.S. might have Indian ancestry. Accordingly, we conclude any deficiencies in the ICWA procedures in the juvenile court were harmless.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

11